<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL VIII</td></tr>
<tr>
<td>BETZAIDA BAUZÁ MARRERO<br><br>Apelada<br><br>v.<br><br>JULIO ALICEA VASALLO, ALCALDE; MUNICIPIO DE CATAÑO<br><br>Apelante</td>
<td>TA2025AP00538</td>
<td>APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: CT2025CV00228 (502)<br><br>Sobre: Recurso Especial de Revisión Judicial para el Acceso a Información Pública (Ley Núm. 141-2019, según enmendada)</td>
</tr>
</table>

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de enero de 2026.

Comparece ante nos el Municipio Autónomo de Cataño ("Municipio" o "la Apelante") mediante *Recurso de Apelación* y *Moción en Auxilio de Jurisdicción,* ambos presentados el 11 de noviembre de 2025. Nos solicita la revisión de la *Sentencia* dictada y notificada el 9 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro primario" o "tribunal *a quo"*). Por virtud del aludido dictamen, el foro primario declaró *Ha Lugar* el *Recurso Especial de Revisión Judicial para el Acceso a Información Pública* instado por la parte apelada, Betzaida Bauzá Marrero *("Legisladora Municipal" o "la parte apelada").* Inconforme con el dictamen, el Municipio presentó *Moción de Reconsideración,* la cual fue declarada *No Ha Lugar* mediante *Resolución* dictada el 25 de septiembre de 2025.

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen apelado.

**I.**

La presente controversia tuvo su inicio el 11 de julio de 2025, cuando la Legisladora Municipal presentó por derecho propio *Recurso Especial de Revisión Judicial para el Acceso a Información Pública*, a tenor con la Ley Núm. 141-2019, según enmendada, conocida como la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*, 3 LPRA sec. 9911, et seq. ("Ley Núm. 141-2019") ante el Tribunal de Primera Instancia, Sala Superior de Bayamón.[1] Por virtud de la aludida solicitud, requirió un "listado de empleados transitorios con nombres, puestos, sueldos, oficinas y años de servicios antes de la otorgación de la permanencia y otro listado con nombres, puestos, sueldos y oficinas de aquellos empleados transitorios que se les otorgaron las permanencias".[2] Consta en el escrito sometido, que la solicitud de documentos fue entregada personalmente en la oficina del alcalde del Municipio y que, a la fecha de haberse instado el recurso, la información requerida no se había entregado.

En respuesta, el 11 de agosto de 2025, la parte Apelante presentó *Moción en Oposición y en Solicitud de Desestimación de Recurso por No Cumplir con los Requisitos de la Ley Núm. 141-2019*.[3] En la misma, arguyó que el petitorio instado por la parte apelada fue realizado en su carácter oficial como legisladora municipal y no como ciudadana particular, al amparo de la Ley 141-2019, *supra*. Alegó, además, que la solicitud no cumple con los requisitos estatuidos en la referida Ley y que su solicitud debía canalizarse a través de la Legislatura Municipal de Cataño, cuerpo legislativo del

---

[1] Véase, SUMAC TPI, Entrada 1.
[2] Véase, SUMAC TPI, Entrada 1.
[3] Véase, SUMAC TPI, Entrada 5, pág. 2.

cual es miembro. Enfatizó que "la ley no fue diseñada para sustituir o eludir los mecanismos reglamentarios que rigen la función investigativa de los cuerpos legislativos".[4] Por tanto, solicitó la desestimación del recurso.

Oportunamente, el 22 de agosto de 2025, la parte apelada presentó *Moción en Cumplimiento de Orden y Réplica a "Moción en Oposición..."*.[5] Luego de ciertos trámites procesales, el foro *a quo* emitió *Sentencia* el 9 de septiembre de 2025, en la cual declaró *Ha Lugar* el recurso presentado.[6] Como corolario de ello, ordenó la divulgación, producción e inspección de la información solicitada.

Inconforme con la determinación, el 24 de septiembre de 2025, el Municipio presentó *Moción en Reconsideración a Sentencia.*[7] Al día siguiente, el foro primario declaró *No Ha Lugar* la solicitud incoada.[8]

Luego de varios incidentes procesales,[9] aún en desacuerdo, el Municipio presentó el 11 de noviembre de 2025, el recurso de epígrafe y *Moción en Auxilio de Jurisdicción*, en los que formuló los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TPI EN LA APRECIACIÓN DE LOS HECHOS Y EL DERECHO QUE SUSTENTAN LA MOCIÓN EN OPOSICIÓN Y EN SOLICITUD DE DESESTIMACIÓN DE RECURSO POR NO CUMPLIR CON LOS REQUISITOS DE LA LEY NÚM. 141-2019 PRESENTADA POR EL MUNICIPIO AL DENEGARLA Y RESOLVER QUE PROCEDE ENTREGAR LA INFORMACIÓN PÚBLICA SOLICITADA POR LA PARTE RECURRENTE-APELADA, A PESAR DE QUE COMPARECE EN SU CARÁCTER OFICIAL DE LEGISLADORA MUNICIPAL A SOLICITAR

---

[4] Véase, SUMAC TPI, Entrada 5, pág. 2.

[5] Véase, SUMAC TPI, Entrada 7.

[6] Véase, SUMAC TPI, Entrada 21.

[7] Véase, SUMAC TPI, Entrada 22.

[8] Véase, SUMAC TPI, Entrada 23.

[9] El 30 de septiembre de 2025, la parte apelada presentó *Moción solicitando Orden de Desacato* en la cual arguyó que el foro primario concedió hasta el 23 de septiembre de 2025, para la divulgación, producción e inspección de los documentos públicos solicitados por la Legisladora Municipal mediante la orden emitida el 9 de septiembre de 2025. Ante esta alegación de incumplimiento, el Municipio instó *Moción en Cumplimiento de orden y en Oposición a Moción de Solicitando Orden de Desacato.* En lo atinente, alude a que el término fue interrumpido al someterse la moción de reconsideración. A tenor de lo anterior, suplicó al foro primario que denegara la orden de desacato peticionada. Acto seguido, el foro *a quo* declaró mediante *Resolución Interlocutoria* No Ha Lugar la solicitud de desacato.

INFORMACIÓN A LA RAMA EJECUTIVA INVOCANDO LAS DISPOSICIONES DE LA LEY NÚM. 141-2019 CUANDO ESTO CONSTITUYE UNA USURPACIÓN DE LOS PODERES Y FACULTADES DELEGADOS AL PRESIDENTE DE LA LEGISLATURA MUNICIPAL, VIOLENTA LAS DISPOSICIONES DE LA LEY NÚM. 107-2020, SEGÚN ENMENDADA, CONOCIDA COMO CÓDIGO MUNICIPAL DE PUERTO RICO, EL REGLAMENTO DE LA LEGISLATURA MUNICIPAL DE CATAÑO Y LA SEPARACIÓN DE PODERES DISPUESTA EN LA CONSTITUCIÓN DE PUERTO RICO.

SEGUNDO ERROR: EL TPI ABUSÓ DE SU DISCRECIÓN AL CONSIDERAR HECHOS AJENOS AL CASO BAJO LOS CUALES SUSTENTÓ SU DETERMINACIÓN EN LA SENTENCIA DICTADA, EN CLARO PREJUICIO Y PARCIALIDAD.

El 13 de noviembre de 2025, esta Curia emitió *Resolución* mediante la cual declaró *No Ha Lugar* el auxilio de jurisdicción y le concedió hasta el 2 de diciembre de 2025 para presentar su alegato. Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### A. Derecho a la Información Pública

Nuestro ordenamiento jurídico ha reconocido, como pilar de toda sociedad democrática, el derecho fundamental de los ciudadanos al acceso a la información pública, el cual está estrechamente vinculado con los derechos a la libertad de palabra, prensa y asociación consagrados en el Artículo II de la Constitución de Puerto Rico. Art. II sec. 4 Const. ELA, Tomo 1; Véase, además, Kilometro *0 v. Pesquera López et al.,* 207 DPR 200, 207 (2021). Este derecho garantiza que toda persona pueda examinar el contenido de los expedientes, informes y documentos que hayan sido recopilados por el Estado durante sus gestiones gubernamentales. *Engineering Services v. AEE,* 205 DPR 136, 145-146 (2020). "El derecho de acceso a la información pública es principio inherente de toda sociedad democrática, por lo que hemos sido consecuentes al

reconocer su carácter fundamental y constitucional." (citas omitidas) *Engineering Services v. AEE,* 205 DPR 136, 145 (2020).

Cónsono con el mandato constitucional, por virtud del Artículo 409 del Código de Enjuiciamiento Civil, 32 LPRA sec. 1781, nuestro ordenamiento por vía estatutaria ha reconocido que todo ciudadano tiene derecho a inspeccionar y a fotocopiar cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario a la ley. Esto pues, en una sociedad democrática, "resulta imperativo reconocer al ciudadano común el derecho legal de examinar e investigar cómo se conducen sus asuntos. (citas omitidas). *Kilómetro 0 v. Pesquera López et al., supra,* págs. 207-208. Tal conocimiento permite evaluar y fiscalizar la función pública de manera más adecuada , como también, cataliza la participación ciudadana más efectiva e inteligente en los procesos gubernamentales y promueve la transparencia en la función gubernamental. *Íd.,* citando a *Bathia Gautier v. Gobernador,* 199 DPR 59, 80-81 (2017).

No obstante, el derecho de acceso a la información pública no es absoluto, y está sujeto a las limitaciones que, por necesidad imperiosa, dicta el Estado. *Engineering Services v. AEE, supra,* págs. 148-149. En dicho contexto, se ha reconocido que un reclamo de confidencialidad sobre información pública puede prosperar en las siguientes instancias: 1) si una ley así lo declara; 2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; 3) revelar la información puede lesionar derechos fundamentales de terceros; 4) se trate de la identidad de un confidente, según la Regla 515 de Evidencia de 2009, 32 LPRA AP VI y; 5) se trata de "información oficial" conforme a la Regla 514 de Evidencia, *supra. Kilómetro 0 v. Pesquera López et al., supra,* pág. 210.

Ahora bien, ante un reclamo de confidencialidad, compete al Estado la carga probatoria exigida para establecer la efectiva concurrencia de alguna de las referidas excepciones "y satisfacer los criterios de un escrutinio estricto". *Íd.* Por tanto, la negación por parte del Estado a la divulgación de información pública debe estar fundamentada y justificada, sin que sean suficientes meras alegaciones. *Íd.*

### B. La *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*

La *Ley de Transparencia y Procedimiento Expedito para el Acceso a la información Pública*, Ley Núm.141 de 1 de agosto de 2019, según enmendada, 3 LPRA sec. 9911, *et seq.,* se promulgó con el fin principal de "fomentar una cultura inequívoca de apertura sobre las gestiones del Gobierno, establecer política proactiva sobre la rendición de cuentas a la ciudadanía, desalentar los actos de corrupción o antiéticos, promover la participación ciudadana", entre otros. Véase, Exposición de Motivos, Ley Núm. 141-2019. A su vez, la referida pieza legislativa se insertó en nuestro esquema legal con la intención de promover el acceso a la información pública de manera ágil, efectiva y transparente.

A los fines de cumplir con dichos propósitos, el Artículo 3 del antedicho estatuto expresamente consagra una política pública de apertura a la información y documentación pública, estableciendo que esta se presume pública y accesible a todas las personas por igual. Además, dispone que "[t]oda información o documento que se origine, conserve o reciba en cualquier dependencia del Gobierno, aunque se encuentre bajo la custodia de un tercero, se presume público y debe estar accesible al Pueblo y la prensa". 3 LPRA sec. 9913.

### C. Código Municipal y la Legislatura Municipal

El Código Municipal de Puerto Rico, Ley Núm. 107 de 14 de agosto de 2020, según enmendada, 21 LPRA sec. 7011 *et seq.*, en su Artículo 1.006 dispone que "[c]ada municipio tiene capacidad legal independiente y separada del Gobierno estatal de Puerto Rico, con sucesión perpetua y capacidad legislativa, administrativa y fiscal en todo asunto de naturaleza municipal". En tal sentido, las facultades legislativas conferidas a los municipios son ejercidas por la Legislatura Municipal. Cónsono con lo anterior, el Código Municipal de Puerto Rico, supra, establece que la composición de la Legislatura Municipal varía por municipio, tomando en consideración la población que habita en el mismo.

En cuanto la elección de sus miembros, el Código Municipal de Puerto Rico, *supra*, establece lo siguiente:

> Los partidos políticos sólo podrán postular trece (13), once (11) y nueve (9) candidatos a las Legislaturas Municipales compuestas de dieciséis (16), catorce (14) y doce (12) miembros respectivamente; disponiéndose, que para la Ciudad Capital de San Juan, podrán postular catorce (14) y para Culebra cuatro (4).
>
> La Comisión Estatal de Elecciones declarará electos entre todos los candidatos, a los trece (13), once (11), nueve (9), catorce (14) y cuatro (4) que hayan obtenido la mayor cantidad de votos directos.
>
> [...]
>
> (a) La Comisión Estatal de Elecciones declarará electo, entre los candidatos que no hayan sido electos por el voto directo, aquellos dos (2) que hayan obtenido más votos en el partido que llegó segundo en la votación para Legislador Municipal, y uno (1) del partido que llegó tercero. Artículo 1.022 del Código Municipal de Puerto Rico, 21 LPRA sec. 7043.

De otro lado, el Artículo 1.039 del Código Municipal de Puerto Rico, enumera algunos de los deberes y facultades generales que ostenta la Legislatura Municipal y sus miembros, entre las cuales se destacan las siguientes:

> (a) Aprobar anualmente la resolución del presupuesto general de ingresos y gastos del municipio.
>
> (b) Confirmar los nombramientos de los funcionarios municipales, de los oficiales municipales y miembros de juntas o entidades municipales cuyos nombramientos

estén sujetos a la confirmación de la Legislatura Municipal, por disposición de esta o cualquier otra ley.

(c) Aprobar por ordenanza los puestos de confianza del municipio, conforme a las disposiciones de este Código.

(d) Aprobar la permuta, gravamen, arrendamiento o venta de bienes inmuebles municipales.

(e) Autorizar la imposición de contribuciones sobre la propiedad, tasas especiales, arbitrios, tarifas, derechos o impuestos dentro de los límites jurisdiccionales del municipio, sobre materias no incompatibles con la tributación del estado con sujeción a la ley.

(f) Aprobar ordenanzas que impongan sanciones penales o multas administrativas por violación a las ordenanzas y resoluciones municipales, hasta los límites y de acuerdo a lo dispuesto en este Código.

(g) Autorizar los reajustes presupuestarios que someta el Alcalde y las transferencias de créditos de las cuentas para el pago de servicios personales a otras dentro del presupuesto general de gastos. La Legislatura Municipal no podrá autorizar reajustes o transferencias que afecten adversamente las cuentas para el pago de intereses, la amortización y retiro de la deuda pública, las obligaciones estatutarias, para el pago de sentencias de los tribunales de justicia, para contratos ya realizados y la cuenta consignada para cubrir sobregiros del año anterior.

(h) Autorizar la contratación de empréstitos, conforme con las disposiciones establecidas en este Código, otras leyes, las leyes especiales, la reglamentación aplicable y las leyes federales correspondientes.

(i) Disponer mediante ordenanza o resolución lo necesario para ejercer las facultades conferidas al municipio en lo relativo a la creación de organismos intermunicipales y a la otorgación de convenios, en tanto y en cuanto comprometan económica y legalmente al municipio, salvo se disponga lo contrario en este Código.

(j) Aprobar los planes del área de recursos humanos del municipio, los reglamentos, las guías, clasificación y escalas de pago que deban adoptarse para la administración del sistema de recursos humanos, que someta el Alcalde, de conformidad con este Código.

(k) Aprobar los reglamentos para las compras, arrendamiento de equipo o ejecución de servicios para casos de emergencias provocadas por desastres.

(l) Ratificar y convalidar las gestiones, actuaciones, gastos y obligaciones incurridas por el Alcalde en el ejercicio de la facultad conferida en este Código para los casos en que se decrete un estado de emergencia.

(m) Aprobar aquellas ordenanzas, resoluciones y reglamentos sobre asuntos y materias de la competencia o jurisdicción municipal que de acuerdo a este Código o cualquier otra ley, deban someterse a su consideración y aprobación.

[…]

**(p) Realizar las investigaciones y vistas públicas necesarias para la evaluación de los proyectos de ordenanzas y resoluciones que le tengan ante su consideración o para propósitos de desarrollar cualquier legislación municipal, incluyendo el poder de fiscalización.** (Énfasis nuestro)

[…]

Artículo 1.039 del Código Municipal de Puerto Rico, 21 LPRA sec. 7065.

### D. *Reglamento de la Legislatura Municipal de Cataño*

De otra parte, entre las facultades concedidas a las Legislaturas Municipales, el Código Municipal de Puerto Rico, *supra*, dispone en su Artículo 1.048 lo siguiente:

Cada Legislatura Municipal adoptará un reglamento con el propósito de garantizar el ordenamiento lógico y confiable en lo que respecta al procedimiento parlamentario en sus Sesiones. El Reglamento deberá asegurar a todos sus miembros la oportunidad de participar de la investigación, análisis y discusión de los asuntos que se encuentren ante la consideración del Cuerpo. Artículo 1.048 del Código Municipal de Puerto Rico, 21 LPRA sec. 7074.

A tenor con este mandato, el 24 de febrero de 2021, la Legislatura Municipal de Cataño aprobó el *Reglamento de la Legislatura Municipal de Cataño* ("Reglamento"). El mismo regula varios asuntos concernientes al quehacer legislativo, entre los cuales destaca las funciones del presidente, vicepresidente, secretario y portavoces de la legislatura municipal; el procedimiento parlamentario y las reglas del debate. En lo pertinente a esto último, la disposición contenida en el Artículo III (3) (o) establece lo siguiente:

**o. La petición de cualquier Legislador a los fines de solicitar información o documentos que se encuentren en poder del Ejecutivo será requerido a través del Presidente en Sesión Ordinaria y toda la petición de información y/o documentos del Cuerpo o que alguna Comisión desee, es [sic] este caso deberá tener el consentimiento del Cuerpo o de la Comisión.** (Énfasis nuestro)

### III.

Expuesto el marco jurídico y ponderados los argumentos de las partes, procedemos a resolver. Por estar estrechamente relacionados, discutiremos los errores en conjunto. En el presente recurso, el Municipio alega que el tribunal *a quo* erró al no desestimar la causa de acción presentada al amparo de la Ley 141-2019, supra, por la Legisladora Municipal. Argumenta que el foro primario no tomó en cuenta la naturaleza de la acción presentada

por la parte apelada, toda vez que está radicó el recurso especial de acceso a la información en su carácter oficial como legisladora municipal. Veamos.

Consta en el expediente que, el 23 de junio de 2025, la parte apelada remitió una misiva al alcalde del municipio de Cataño, Hon. Julio Alicea Vasallo, en la que le solicitó un listado de unos empleados transitorios. Vale destacar que dicha carta, **fue firmada por la parte apelada en calidad oficial como "Legisladora Municipal PPD".**[10] De hecho, en su carta, la parte apelada esbozó lo siguiente:

> **[E]n cumplimiento de mi deber ministerial de asegurarme que los procesos y acciones dentro del Municipio se realicen conforme a lo dispuesto en el artículo 1.015** del Código Municipal de Puerto Rico, ley núm. 107-2020, así como el derecho constitucional de acceso a la información pública, ley 141-2019 ley de Transparencia y Procedimientos Expedito para el acceso a la información pública y en el mejor interés del pueblo de Cataño, estoy solicitando un listado de empleados transitorios, con nombres, puestos, sueldos, oficinas y años de servicios antes de la otorgación de la permanencia y otro listado con los nombres, puestos, sueldos y oficinas de aquellos empleados transitorios que se les otorgo las permanencias.[11]

Tras no recibir respuesta a su requerimiento, la Legisladora Municipal presentó un recurso especial de acceso a la información al amparo de la Ley Núm. 141-2019, *supra*, ante el foro primario. Nótese que, las gestiones realizadas por la parte apelada han sido en calidad de legisladora municipal del municipio de Cataño. Si bien en nuestro ordenamiento permea el derecho al acceso a la información pública, es necesario distinguir las circunstancias particulares de este caso. La parte apelada es miembro de la Legislatura Municipal de Cataño, lo cual, por virtud del Código Municipal de Puerto Rico, *supra*, la hace poseedora de ciertas obligaciones y facultades que no ostenta cualquier ciudadano. Concretamente, los legisladores municipales son parte del

---

[10] Véase, SUMAC TPI, Entrada 1, Anejo.
[11] Véase, SUMAC TPI, Entrada 1, Anejo.

andamiaje gubernamental de los municipios, y como tal, éstos deben ceñirse a las responsabilidades y facultades enunciadas en el Código Municipal de Puerto Rico, *supra*. En tal sentido, la referida legislación dispone que la legislatura municipal de cada municipio tendrá un reglamento que regirá como debe llevarse a cabo ciertos los procedimientos legislativos. En el caso particular de la Legislatura Municipal de Cataño, el reglamento vigente específicamente dispone lo siguiente en lo concerniente a la controversia ante nuestra consideración:

> **La petición de cualquier Legislador a los fines de solicitar información o documentos que se encuentren en poder del Ejecutivo será requerido a través del Presidente en Sesión Ordinaria y toda la petición de información y/o documentos del Cuerpo o que alguna Comisión desee, es [sic] este caso deberá tener el consentimiento del Cuerpo o de la Comisión.** (Énfasis nuestro)

Es de observarse que el Reglamento de la Legislatura Municipal de Cataño, **el cual obliga a todos sus miembros, incluyendo a la parte apelada**, provee un proceso específico para solicitar información que se encuentre en manos del poder ejecutivo municipal. Ello va en sintonía con el Código Municipal de Puerto Rico, el cual insta que todos los miembros de la Legislatura Municipal "la oportunidad de participar de la investigación, análisis y discusión de los asuntos que se encuentren ante la consideración del Cuerpo". Véase, Artículo 1048 del Código Municipal de Puerto Rico, 21 LPRA sec. 7074.

Indubitablemente, la Legisladora Municipal no siguió este procedimiento y, en su lugar, en su carácter oficial como miembro de la Legislatura Municipal, **solicitó la información directamente al alcalde y posteriormente acudió a los tribunales, en completa contravención a su deber ministerial de actuar conforme lo exige el reglamento del cuerpo al que ella pertenece.**

En tal sentido, el recurso de solicitud de información pública al amparo de la Ley 141-2019, *supra*, presentado por la parte

apelada, no es el mecanismo adecuado para que una Legisladora **M**unicipal del municipio de Cataño, en su carácter oficial, solicite información al ejecutivo municipal, pues existe un procedimiento mediante la propia legislatura municipal, para obtener dicha información. Por consiguiente, lo errores esgrimidos por el Municipio se cometieron y corresponde, revocar la *Sentencia* apelada.

**IV.**

Por los fundamentos expuestos, **revocamos** el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones